2016R00017/DCC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. |
| v. | : Criminal No. 17- |
| PHILIP JUNLIN LI | : 18 U.S.C. § 371 |

**I N F O R M A T I O N**
(Conspiracy to Commit Visa Fraud)

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

**Relevant Entities and Individuals**

1. At all times relevant to this Information:

    a. PHILIP JUNLIN LI ("LI") was a naturalized U.S. citizen who resided in El Monte, California. LI was an employee and affiliate of American International Education Center and Excellent Student Service (collectively, "AIEC"), purported student immigration services and school placement companies located in San Gabriel, California.

    b. JIAMING WANG, a/k/a "Celine Wang" ("WANG"), was a Chinese national and lawful permanent resident of the United States, residing in El Monte, California. WANG was the president of AIEC.

    c. The University of Northern New Jersey (the "School") was located in Cranford, New Jersey. The School was part of a federal law enforcement undercover operation in which federal agents posed as the owners and operators of a for-profit education and business entity. The School was

not staffed with instructors or educators, had no curriculum, and conducted no actual classes or educational activities.

        d.    The United States Department of Homeland Security ("DHS") was responsible for processing requests submitted by foreign citizens seeking lawful entry into and authority to remain in the United States. DHS was further responsible for collecting and maintaining accurate records of nonimmigrant aliens living in the United States.

        e.    The Student and Exchange Visitor Program ("SEVP") was a DHS-monitored program that was responsible for, among other things, managing the international student process in the United States, including the monitoring of certain classes of visa holders.

        f.    The United States Citizenship and Immigration Services ("USCIS") was an agency of the executive branch of the United States and was empowered to approve and process applications for permanent residency.

### Background and Overview of Immigration Process

2.    DHS ran several programs through which foreign citizens could obtain permission to enter and remain in the United States, including the F-1 student visa program. Under the F-1 program, foreign students could enter and remain in the United States on a temporary basis to pursue academic studies. In order to obtain the immigration benefits afforded by the F-1 student visa program, a foreign student had to be accepted into a SEVP-certified school, and the same school had to issue the foreign student a

"Certificate of Eligibility for Nonimmigrant (F-1) Student Status – For Academic and Language Students" (commonly referred to as a "Form I-20").

3.  By issuing a Form I-20 to a foreign student, an accredited school certified that the student: (1) met all standards of admission for the school based on a review of the student's application, transcripts, proof of financial responsibility, and other records; and (2) had been accepted for, and would be required to pursue, a full course of study.

4.  Once a foreign student received a Form I-20 from a SEVP-certified school, the student was eligible to receive an F-1 visa. The foreign student could then use the F-1 visa and Form I-20 to enter and remain in the United States for a period of time known as "duration of status." Federal regulations defined "duration of status" as the time during which a foreign student was pursuing a full course of study at a SEVP-certified school. Additionally, a foreign student was considered to be maintaining valid F-1 student status if he or she was making normal progress toward completing a course of study. After the foreign student completed his or her course of study, the student was typically required to depart the United States.

5.  The Student and Exchange Visitor Information System ("SEVIS") was a DHS internet-based data system that provided users with access to current information on nonimmigrant foreign citizens, exchange aliens, and their dependents. Each Form I-20 that was issued by a school to a foreign citizen contained a system-generated identification number. This number was referred to as the "SEVIS ID number." Generally, the SEVIS ID number

3

remained the same as long as the foreign citizen maintained his or her valid, original nonimmigrant status. This number typically remained the same regardless of any changes or updates made by the school to the foreign citizen's record.

6. Once in the United States, a foreign citizen was generally permitted to transfer from one SEVP-certified school to another, as long as that individual maintained valid F-1 student status and was pursuing a full course of study. To effect such a transfer while maintaining valid status, a foreign citizen had to first obtain a school acceptance letter and a SEVIS transfer form from the SEVP-certified school to which the student intended to transfer. The foreign citizen was then permitted to transfer to that school, obtain a Form I-20, and remain in the United States as long as he or she pursued a full course of study at the new SEVP-certified school.

7. In addition to taking a full course of study at an accredited institution, an F-1 student was also permitted to seek practical training – which could include paid employment – that was directly related to the student's major and was considered part of the student's program of study. The two types of practical training available to F-1 students included curricular practical training ("CPT") and optional practical training ("OPT"). If approved by a SEVP-certified school officer, an F-1 student was entitled to obtain a new Form I-20 indicating that he or she had been approved for either CPT or OPT. Generally, therefore, as long as an F-1 student had been properly enrolled at a SEVP certified school, had taken classes and earned credits, and had made

4

academic progress toward graduation, that F-1 student may have had the opportunity to work full or part-time CPT or OPT, in addition to taking classes.

8. Other foreign nationals were permitted to obtain work authorization in the United States through the H-1B visa program, subject to certain requirements. Generally, this program allowed businesses in the United States to employ foreign workers with specialized or technical expertise in a particular field.

9. USCIS periodically issued a Request for Evidence ("RFE") in connection with its review of various immigration petitions, including change of status petitions from F-1 status to H-1B status. Documents typically provided by a petitioner in response to a RFE included, among others, proof of enrollment and payment of school tuition, student identification cards, student transcripts and attendance records, proof of CPT work authorization and cooperative employer-student agreements, diplomas, and other education-related materials.

## **The Conspiracy**

10. From in or about September 2014 through in or about March 2016, in Union County, in the District of New Jersey and elsewhere, defendant

PHILIP JUNLIN LI

did knowingly and intentionally conspire and agree with WANG, and others known and unknown, to commit an offense against the United States, that is, to utter, use, attempt to use, possess, obtain, accept, and receive nonimmigrant visas, namely, Forms I-20 and other documents proscribed by statute and regulation for entry into and as evidence of authorized stay in the United States, knowing that such documents were forged, counterfeited, altered, and falsely made, and had been procured by means of false claims and statements and otherwise procured by fraud and unlawfully obtained, contrary to Title 18, United States Code, Section 1546(a).

### Object of the Conspiracy

11. It was the object of the conspiracy to enable foreign individuals to fraudulently maintain nonimmigrant status and obtain employment authorization to remain in the United States on the basis of Forms I-20 that falsely stated the foreign individuals were enrolled in a full course of study at an academic institution.

### Manner and Means of the Conspiracy

12. It was part of the conspiracy that LI and WANG recruited and helped to facilitate the enrollment of foreign students at the School. These efforts were intended to enable those individuals to fraudulently maintain nonimmigrant status and obtain employment authorization to remain in the United States through immigration documents obtained on the false pretense that these aliens were participating in full courses of study at an academic institution.

13. It was further part of the conspiracy that LI and WANG told their foreign recruits that they could enroll at the School without having to attend any classes, and that such enrollment would enable the foreign recruits to fraudulently maintain their nonimmigrant status and, in certain cases, to unlawfully obtain work authorization in the United States. The defendant and his co-conspirators had full knowledge that the aliens they recruited were not bona fide students, would not attend any courses, earn credits, or make academic progress toward a legitimate degree.

7

14. It was further part of the conspiracy that, in exchange for receiving a Form I-20 and being reported in SEVIS as a legitimate foreign student, LI and WANG facilitated payments - falsely characterized as tuition - to the School, which payments corresponded to the length of time that the purported foreign students were enrolled at the School.

15. It was further part of the conspiracy that, in order to deceive immigration officials, LI, WANG and their co-conspirator clients obtained and created fraudulent student records, including attendance records and transcripts, for some of the foreign students who were purportedly attending the School. LI, WANG and their co-conspirator clients obtained blank template documents from the School, and used those templates to create false education documents and records, which records in certain instances were submitted to USCIS in response to an RFE for the purpose of deceiving immigration officials in connection with petitions for change of visa status.

## Overt Acts

16. In furtherance of the conspiracy and in order to effect the object thereof, LI, WANG and their co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

 a. On or about September 4, 2014, WANG engaged in a telephone conversation with an undercover law enforcement officer posing as a School representative at the School's offices in Cranford, New Jersey. During this conversation, WANG discussed, among other matters, a plan to recruit foreign nationals to enroll at the School in order to maintain their immigration status without having to attend classes.

 b. On or about October 3, 2014, WANG sent an e-mail to an undercover law enforcement officer at the School in New Jersey. In this communication, WANG discussed, among other matters, the cost for AIEC's clients to enroll in UNNJ in order to obtain fraudulent immigration documents, as well as AIEC's desire to serve as UNNJ's exclusive recruiter of purported foreign students in California, Oregon, and Washington.

 c. On or about February 5, 2015, WANG sent a text message to an undercover law enforcement officer in New Jersey. In this communication, and in an effort to facilitate ongoing fraudulent activities, WANG requested permission for AIEC to issue acceptance letters to AIEC's foreign national recruits on behalf of UNNJ.

   d. On or about March 12, 2015, LI engaged in a telephone conversation with an undercover law enforcement officer in New Jersey. During this conversation, LI discussed, among other matters, plans to evade detection by law enforcement of AIEC and UNNJ's ongoing fraudulent activities.

   e. On or about May 26, 2015, WANG sent an e-mail to the School in New Jersey to advise that an H-1B visa application had been submitted on behalf of one of AIEC's foreign national recruits.

   All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

1.    As a result of committing the offense alleged in this Information, defendant PHILIP JUNLIN LI, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(6)(A)(ii) any and all property constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count One of this Information, including but not limited to:

    a.    All of the defendant's right, title, and interest in the following specific property: $800 in U.S. currency, that was lawfully seized from LI on or about April 5, 2016.

### **Substitute Assets Provision**

2.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

*[signature]*

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 17-

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**PHILIP JUNLIN LI**

# INFORMATION FOR
18 U.S.C. § 371

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

DENNIS C. CARLETTA
*ASSISTANT U.S. ATTORNEY*
*(973) 645-2767*

USA-48AD 8
(Ed. 1/97)